IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VON CLAY BENNETT,                   :

     Petitioner,                   :

vs.                                 :        CIVIL ACTION NO.   12-343-WS-B
                                       CRIMINAL ACTION   09-083-WS-B

UNITED STATES OF AMERICA,           :

     Respondent.                   :

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Von Clay Bennett's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 68, 73), the Government's Response thereto (Doc. 75), and Petitioner's Reply. (Doc. 78). This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration. Because the record is adequate to dispose of this matter, no evidentiary hearing is required. Having carefully reviewed the record, it is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 68, 73) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Von Clay Bennett ("Bennett").

I. BACKGROUND AND FACTS

On March 26, 2009, the grand jury returned an indictment against Bennett. (Doc. 1). The indictment alleged three counts of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1).[1] (Doc. 1; Doc. 19-1 at 13-14). On August 11, 2009, the Court appointed attorney Christopher Knight ("Knight"), an assistant federal defender, to represent Bennett. (Docs. 8, 9, 10). With the assistance of counsel, Bennett negotiated a guilty plea with the government and he, his attorney, and the Assistant United States Attorney, signed a Plea Agreement and Factual Resume on September 18, 2009 and September 21, 2009, respectively. (Doc. 19-1). At a guilty plea hearing conducted on September 21, 2009, Bennett acknowledged that he understood the charges against him and the penalties he faced if convicted. (Doc. 61). He also acknowledged the truth of the facts in the Factual Resume, and that he was freely entering the guilty plea. (Id.).

Subsequent to the guilty plea hearing, Bennett corresponded with Knight by letter, and expressed his dissatisfaction with Knight and requested different defense counsel. (Doc. 73 at 8-10). On November 3, 2009, Knight, per Bennett's request,

---

[1] The indictment resulted after the Baldwin County Sheriff's Office Drug Task Force made three controlled drug buys from Bennett on August 4, 2008, August 26, 2008 and September 10, 2008. (Doc. 1; Doc. 19-1 at 13-14). Bennett's six year old daughter was present during the August 26th buy. (Id.)

requested an *ex parte* hearing with the Court to discuss the appointment of new counsel for Bennett "due to disagreements with current counsel regarding the manner in which [Bennett was] being represented." (Doc. 21). Prior to the scheduled hearing, however, Knight filed a motion to withdraw as Bennett's attorney based on a newly discovered conflict of interest. (Doc. 23). Knight's motion to withdraw was granted and D.E. "Skip" Brutkiewicz, Jr. ("Brutkiewicz") was appointed by the Court to represent Bennett on November 13, 2009. (Docs. 24-25).

On May 5, 2010, the Probation Office entered a Presentence Investigation Report ("PSR") for Bennett. (Doc. 32). The report included information regarding Bennett's behavior following his arrest on August 10, 2009:

> When Bennett sat down in the back seat of the patrol car, he reached into his pocket and removed his cell phone. Bennett then placed a call to his mother, who resided on McGee Circle, in Bay Minette, Alabama. During the phone call, Bennett instructed his mother to remove "that stuff" from a big bowl on top of the refrigerator and flush it down the toilet. As the [sic] Bennett's mother was attempting to tell Bennett something, the officers on the scene noticed that Bennett was talking on the cell phone, and one officer reached into the car and removed the cell phone. Investigation revealed that when officers executed a search warrant at the Bennett's mother's residence, they did not recover the drugs from the top of the refrigerator.

(Doc. 32 at 4). In response to the PSR, the government requested a sentence enhancement due to Bennett's obstruction of

justice, namely, the post arrest phone call to his mother and the selling of drugs in the presence of a minor child. (Doc. 30). Bennett, through counsel, filed a response opposing the government's request for enhancement.[2] (Doc. 35).

At the sentencing hearing, the Court, consistent with the PSR, found that the base offense level was 34 (given the Court's finding that Bennett was accountable for 1.021 kilograms of crack cocaine), and that a two-level enhancement for obstruction of justice and a three-level deduction for early acceptance of guilt were warranted. (Docs. 61-1 at 13, 72). Based on an adjusted based level of 33, and Bennett's criminal history category of IV, the applicable advisory sentencing guideline range was 188 to 235 months in prison. (Doc. 32 at 16). Bennett received a low-end sentence of 188 months as to Count One, Two, three, to be served concurrently.[3] (Docs. 41, Doc. 61-1 at 16). On June 15, 2010, Bennett filed a Notice of Appeal, which was dismissed by the Eleventh Circuit on May 20, 2011 based on the

---

[2] Specifically, defense counsel asserted that "the Government agreed not to bring additional charges against Defendant if he plead guilty to Counts 1, 2, and 3" and that the government should not now be allowed to enhance his sentence for obstruction of justice. (Doc. 35 at 1).

[3] Bennett filed multiple requests for sentence reductions. (Docs. 67, 79, 83, 86). All of the motions were denied except, on December 31, 2014, Bennett's sentence was reduced to 151 months based on Amendment 782 to the United States Sentencing Guidelines. (Docs. 90, 91).

appeal waiver contained in Bennett's Plea Agreement. (Doc. 66 at 3).

On May 11, 2012,[4] Bennett filed the present petition pursuant to 28 U.S.C. § 2255.[5] (Doc. 68). In his petition, Bennett asserts that he received ineffective assistance of counsel in violation of his Sixth Amendment constitutional right to assistance of counsel. (Id.). Bennett enumerates three specific ineffective assistance of counsel claims, namely that his counsel was ineffective for: 1) not securing a downward departure from the sentencing guidelines due to the timing of Bennett's debriefing, 2) representing Bennett although a conflict of interest existed and failing to inform Bennett that he was waiving his appeal rights by entering the plea agreement, and 3) failing to properly prepare for sentencing. (Id. at 4-7, 14-16). Bennett requests to have sentence vacated, or in the alternative, that the Court grant him an evidentiary hearing to

---

[4]    Under the mailbox rule, absent contrary evidence, a prisoner's motion is deemed filed on the date it is delivered to prison officials for mailing. Washington v. United States, 243 F.3d 1299, 1301 (llth Cir. 2001).

[5]    Bennett filed an Addendum to the Motion to Vacate on May 31, 2012. (Doc. 73). The Addendum essentially reiterates the claims in Bennett's Motion to Vacate and attaches a letter, dated September 23, 2009, that was addressed and sent to attorney Knight. (Doc. 73 at 8-10). The letter expresses Bennett's dissatisfaction with the representation of Knight and requests Knight withdraw as his defense counsel. (Id.).

determine     the     facts. [6]         (Doc.     68     at     13).
In  opposing  Bennett's  petition,  the  United  States  argues  that
Bennett's  claims  of  ineffective  assistance  of  counsel  are  due  to
be  dismissed  as  a  matter  of  law  because  they  are  precluded  by
his  knowing  and  voluntary  guilty  plea.  The  Government  also
argues  that  Bennett's  claims  are  factually  false  and  that  he  has
failed  to  establish  prejudice  from  his  counsel's  alleged
deficient  performance.   (Doc. 75).  Bennett  filed  a  Reply  in
which  he  further  expounds  on  his  original  claims.  (Doc. 78).

**II.  LEGAL STANDARDS**

**1.    Habeas Standard.**

---

[6]     Upon  review,  the  undersigned  finds  that  no  evidentiary
hearing  is  warranted  because  Bennett's  claims  can  be  resolved
based  on  the  existing  record.  Schultz v. Wainwright, 701 F.2d
900,  901  (11th  Cir.  1983)  ("An  evidentiary  hearing  is  not
required  where,  as  here,  the  district  court  can  determine  the
merits  of  the  ineffectiveness  claim  based  on  the  existing
record.");  see also Aron v. United States, 291 F.3d 708, 715
(11th  Cir.  2002)  ("[D]istrict  court  is  not  required  to  hold  an
evidentiary  hearing  where  the  petitioner's  allegations  are
affirmatively  contradicted  by  the  record,  or  the  claims  are
patently  frivolous.")(citation  omitted);  Mobley v. United
States, No. 12-354-WS-C, 2013 U.S. Dist. LEXIS 116670, at *51,
2013 WL 4166553, *23 (S.D. Ala. Aug. 15, 2013) ("There is no
need  for  an  evidentiary  hearing  [because]  [o]n  the  existing
record,  Mobley  has  not  presented  non-conclusory  facts  that,  if
true,  would  entitle  her  to  relief.").  See also, San Martin v.
McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011)(quoting Pugh v.
Smith, 465 F.3d 1295, 1300 (11th Cir. 2006)("'An evidentiary
hearing  may  be  necessary  where  the  material  facts  are  in
dispute,  but  a  petitioner  is  not  entitled  to  an  evidentiary
hearing  when  his  claims  are  merely  conclusory  allegations
unsupported by specifics.'").

Habeas relief is an extraordinary remedy which "may not do service for a[] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). However, a petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent.

Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990). A meritorious claim of ineffective assistance of counsel can constitute cause. U.S. v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979)(citations omitted). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant

to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 772, 102 L. Ed. 2d 927 (1989).

**2.   Ineffective Assistance of Counsel Standard.**

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. CONST., amend. VI; Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Supreme Court has held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations. Missouri v. Frye, 132 S. Ct. 1399, 1404-08, 182 L. Ed. 2d 379 (2012). "Thus, criminal defendants are 'entitled to the effective assistance of competent counsel' during plea negotiations." Frank v. United States, 522 F. App'x 779, 781 (11th Cir. 2013) (citation omitted). The Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel in Strickland, 466 U.S. 668. The Court held that "[when] a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Of course, there is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Id. at 689. Counsel's performance is deficient only if it falls below the wide range

of competence demanded of attorneys in criminal cases.  Id.  In addition, "[the] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  This additional "prejudice" requirement was based on the conclusion that "[an] error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.

## III. DISCUSION

### 1.  Claim One: Ineffective Assistance of Counsel due to Timing of Bennett's Debriefing by Investigators.

In his petition, Bennett argues that his trial counsel was ineffective because he denied him the opportunity to be "debriefed by investigators" prior to entering his plea agreement, and that he allowed "his client to offer up information prior to an agreement" thereby hindering his ability to receive a lesser sentence.  (Docs. 68 at 4, 78 at 2). Bennett also contends that trial counsel "allowed Bennett to waive almost all of his rights by signing a plea agreement that was not voluntary, was not knowing, and was unintelligently given."  (Doc. 78 at 2).  Based upon a review of Bennett's petition and the record, the Court finds this claim is due to be

denied as Bennett has failed to show that his trial counsel was ineffective or that he was prejudiced.

Turning first to Bennett's claim that his plea was not knowing and voluntary, the Court observes that a plea of guilty is "constitutionally valid" if "voluntary" and "intelligent." Bousley v. United States, 523 U.S. 614, 618 (1998)(citation omitted). A plea is voluntary in a constitutional sense if it was "entered by one fully aware of the direct consequences of the plea," and not induced by threats, misrepresentation, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business." Id. at 619 (citations and internal quotation marks omitted). A plea is intelligent in a constitutional sense if a criminal defendant received "real notice of the true nature of the charge against him." Id. at 618 (citations and internal quotation marks omitted). If the defendant "was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him," his plea was entered intelligently even if at the time of the plea, he "did not correctly assess every relevant factor entering into his decision." Id. at 619 (citations and internal quotation marks omitted).

The record reflects that on September 21, 2009, District Judge Steele conducted a full and sufficient plea colloquy with

Bennett as required by Federal Rule of Criminal Procedure 11. (See Doc. 61). Bennett was placed under oath and warned of the possibility of a perjury charge if he answered any of the Court's questions falsely during the proceedings. (Id. at 4). Bennett testified that he was 34 years old and had completed the Eleventh grade. (Id. at 5). He also testified that he was not "currently under the influence of any drug, medication, or alcoholic beverage" which would affect her ability to participate in the proceedings. (Id. at 7). Of particular significance to Bennett's claim is the following exchange which took place during the guilty plea hearing:

> THE COURT: Have [] you received a copy of the indictment or information in your case, have you had a full opportunity to read it and review it with your attorney, and do you understand the charges contained in the indictment or information?  Mr. Bennett?
>
> DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: Are [] you fully satisfied with the representation you've received from your attorney in this case, and have you fully discussed with your attorney all the facts surrounding the charge?  Mr. Bennett?
>
> DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: Now, I've been furnished [a] written plea agreement[] in [] your case[], and this plea agreement appears to have your signature in a couple of places, at the end of the plea agreement and also at the end

of the factual resume. Did you, in fact, sign the document?  Mr. Bennett?

DEFENDANT: Yes, sir.

. . . .

THE COURT: By signing this document, you are acknowledging that you received a copy of it, that you've had an opportunity to review it and discuss it with your attorney, and that you agree - - that you understand the terms and conditions of the plea agreement and the factual resume, and that you agree with it. Is that true?  Mr. Bennett?

DEFENDANT:  Yes, sir.

. . . .

THE COURT: All right. Have there been promises made to you by anyone or has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way?  Mr. Bennett?

DEFENDANT: No, sir.

THE COURT: Now, the penalties that could be imposed if convicted of [Count One of the indictment] are outlined in your plea agreement on page three . . . . Okay.  If convicted of those three counts, you could receive a term of imprisonment up to 30 years, fine not to exceed $2 million, a supervised release term up to six years, and a mandatory special assessment of $100 for each count.  You understand that?

DEFENDANT: Yes, sir.

. . . .

THE COURT:  The way in which the Sentencing Guidelines apply to your case might be affected by what you say to the Court and to the probation officer.  The Court will not be able to determine an appropriate sentence for your case until after a presentence report has been completed and you and the United States have had an opportunity to challenge the facts reported by the

probation officer.   Do you understand that, Mr. Bennett?

DEFENDANT:  Yes, sir.

. . . .

THE COURT:   The sentence imposed might be different from any estimate your attorney or anyone else might have given you.  Do you understand that, Mr. Bennett?

DEFENDANT:  Yes, sir.

. . . .

THE COURT:  If the sentence is more severe than you expected or if I do not accept the sentencing recommendation in your plea agreement, you will still be bound by your plea.   Even if you do not like sentence imposed by the Court, you will not be able to withdraw your plea.   The time to make that decision is now.  Do you understand that, Mr. Bennett?

DEFENDANT:  Yes, sir.

. . . .

THE COURT: Okay. All right. Mr. Bennett, did you, in fact, commit the acts and do the things that you have admitted to in this statement of facts?

DEFENDANT BENNETT: Yes, sir.

THE COURT: Then I find that the facts and acts to which you have admitted support a violation of the charges contained in Counts One through Three of the indictment. How do you now plead to those charges, guilty or not guilty?

DEFENDANT BENNETT: Guilty.

(Id. at 7-21).   "There is a strong presumption that the statements made during the [plea] colloquy are true." United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).  "[W]hen a

defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). Moreover, a defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

As noted, during the guilt plea hearing, Bennett affirmed, under oath, that he was "fully satisfied" with the legal representation provided by Knight. (Doc. 61 at 3, 9). Bennett acknowledged that he had been given the opportunity to read and discuss the plea agreement with his attorney before he signed it and that he understood the terms of the plea agreement. (Id. at 9-10). Bennett also stated that he understood the potential 30-year sentence he was facing, in light of his admission to possessing with the intent to distribute crack cocaine, and further acknowledged his understanding that the Court would not determine an appropriate sentence for his case until after a presentence report had been completed by the probation office. (Id. at 11, 16). Given Bennett's signed Plea Agreement, and his acknowledgements during the plea colloquy, it is clear that notwithstanding his assertions to the contrary, his guilty plea was knowing and voluntary.

Next, Bennett makes the confusing argument that his trial counsel was ineffective because he should have allowed Bennett to be debriefed *prior* to entering the plea agreement, and that he should not have allowed Bennett to "offer up information" prior to securing an agreement with the government.  At the outset, the undersigned notes that this argument is confusing because on the one hand Bennett is complaining that his debriefing came too late, and on the other hand, he appears to argue that it should not have occurred until after an agreement had been reached.  Either way, he has failed to establish that his trial counsel was ineffective or that he was prejudiced. First, it is simply not conceivable that the government would have reached an agreement to make a 5k1.1 motion  on behalf of Bennett without first receiving and evaluating any  information offered by him. [7]  Thus, to the extent he is arguing that an agreement for a 5k1.1 motion should have been secured before he offered information and entered his guilty plea, that argument is absurd.  Plus, the record reflects that the plea agreement signed by Bennett expressly provided that procuring a § 5K1.1 motion was completely at the discretion of the government based

---

[7]     18 U.S.C.S. App'x § 5K1.1 ("Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.").

on its satisfaction with the cooperation he provided.[8]   (Id. 7-
8).   Accordingly, in signing the plea agreement, Bennett was
fully aware that any information he provided would be evaluated
by the Government in order to determine if it amounted to
substantial assistance so as to warrant a motion for a downward
departure.   Finally, Bennett concedes that he was in fact
allowed an opportunity to cooperate with the Government, and
that he gave the Government the names of his drug sources after
his arrest and attempted to contact "other drug dealers trying
to make buys from them to cooperate with the [Government]."
(Doc. 61-1 at 13).   At Bennett's sentencing hearing, the
Government addressed his purported cooperation and why it did
not warrant a request for a downward departure. (Id. at 14).
Specifically, the Government argued that "here is a defendant
who in one breath says that he's tried to cooperate, and in the
other breath, he was calling people to destroy evidence for him

---

[8]     The plea agreement expressly provided that "[i]f the
defendant's effort to cooperate with the United States does not
amount to substantial assistance as determined solely by the
United States, the United States agrees to recommend to the
district judge who sentences the defendant that the defendant
receive a sentence at the low end of the applicable advisory
guideline range or the minimum sentence as required by statute,
whichever is applicable." (Doc. 19-1 at 8).   Additionally, the
statutory provision providing for downward departures from the
sentencing guidelines authorizes departures based solely on a
motion from the government. 18 U.S.C.S. App'x § 5K1.1.

to avoid getting caught with substantial, more substantial quantities of drugs." (Id.). Given that the Government retained complete discretion about whether to file a § 5k1.1 motion, that Bennett was fully aware of such at the time he signed the plea agreement, and entered his guilty plea, and that he was in fact afforded an opportunity to cooperate, he cannot establish that his trial counsel was ineffective.

Moreover, Bennett cannot establish prejudice under Strickland. As noted *supra*, a petitioner claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Lafler v. Cooper, 132 S. Ct. 1376, 1384-85, 182 L. Ed. 2d 398 (2012); accord Missouri v. Frye, 132 S. Ct. 1399, 1409-10, 182 L. Ed. 2d 379 (reiterating that the Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) standard applies when "a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial."). Bennett has not alleged, let alone demonstrated that but for his counsel's alleged errors, he would have insisted on going to trial.[9]

---

[9]    Based on information contained in the Factual Resume attached to Bennett's Plea Agreement, a plea agreement was clearly his most viable option. Per the Factual Resume, law enforcement officials made three recorded, controlled buys of

2.    Claim Two:  Ineffective Assistance of Counsel Due to Conflict of Interest and Uninformed Waiver of Rights.

In his § 2255 petition, Bennett also argues that he received ineffective assistance of counsel from Knight because: 1) Knight continued to represent Bennett knowing of a conflict of interest and 2) Knight failed to inform him that entering into a plea agreement with the Government "waived all [his] rights to appeal." (Doc. 68 at 5).  The Court will take each of these arguments in turn.

To obtain relief on a § 2255 motion predicated on a conflict of interest impairing one's Sixth Amendment right to counsel, "a defendant must show *first*, that his attorney had an actual conflict of interest, and *second*, that the conflict adversely affected counsel's performance."  Pegg v. United

---

crack cocaine from Bennett from August 4, 2008 through September 10, 2008. (Doc. 19-1).  Per the factual resume:

> Bennett was eventually arrested on the charges on or about August 10, 2009.  Bennett was advised of his Miranda rights and he agreed to waive his rights and make a statement.  He admitted that he had seen surveillance vehicles on the Friday before and he had to throw way his drugs to avoid being caught with them . . . He said he had dealt with several guys in Atmore since he got out of prison, but he identified his main source of supply as a subject in Prichard.
>
> He said he had received a complete of ounces at a time every other week for the past year from this subject, and that amount would total at least a kilogram of crack cocaine.

(Doc. 19-1 at 15).

States, 253 F.3d 1274, 1277 (11th Cir. 2001)(emphasis in original).   To satisfy the "actual conflict" requirement, a petitioner:

> must show something more than a possible, speculative
> or merely hypothetical conflict . . .  [He] must make
> a factual showing of inconsistent interests and must
> demonstrate that the attorney made a choice between
> possible alternative [courses] of action, such as
> eliciting (or failing to elicit) evidence helpful to
> one client but harmful to the other.

Reynolds v. Chapman, 253 F.3d 1337, 1342-43 (11th Cir. 2001) (citations omitted); see also Quince v. Crosby, 360 F.3d 1259, 1264 (11th Cir. 2004) ("An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'").   To satisfy the "adverse effect" requirement, "a habeas corpus petitioner must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." Pegg, 253 F.3d at 1278; see also Quince, 360 F.3d at 1264.

Bennett fails to satisfy any elements necessary to establish that a conflict of interest prejudiced his constitutional right to counsel.   The record shows that Mr. Knight was appointed as defense counsel for Bennett on August 11, 2009.   (Doc. 9).   Bennett signed an agreement to plead guilty on September 18, 2009 (Doc. 19-1 at 11) and entered a

plea of guilty in open court on September 21, 2009.  (Doc. 61).
On September 23, 2009, Bennett wrote a letter to Knight
requesting that Knight withdraw as his attorney.[10]  (Doc. 73 at
8-10).  On November 3, 2009, Knight filed a motion requesting an
"audience with the Court regarding [Knight's] continued

---

[10]   Within the letter, Bennett identified his reasons for
requesting new counsel were due to disagreements the two had had
and just not seeing "eye to eye."  (Doc. 73 at 8).  The letter
contained the following statements:

        I have never been satisfied with the very minimum
    amount of information you provide me with about my
    case.  You've only given me "possible senarios" [sic]
    leaving me with very little information to make
    important decisions with.

        But first and foremost you have told me more than
    twice "You shouldn't have done it."  That statement
    indicates to me that you have already found me guilty
    and not worthy of a strenuous representation.  Your
    actions shows [sic] the same as well.  There were
    specific requests I made to you that seems to have
    gone ignored.

        Such as my numerous requests that you arrange an
    interview for me with the agents on my case.  You
    haven't done so and I've already changed my plea.  By
    you not arranging the interview, you are disallowing
    me an opportunity to negotiate a 5K1 deal which would
    result in me possibly receive a lesser sentence than
    what I'm now facing.

    . . . .

        I am no longe[r] confident that you're
    representing me to the best of your ability after you
    deemed me guilty.  That was my sole reason for
    pleading guilty.  You did not seem to be fighting for
    me.

(Doc. 73 at 8-9).

representation of [Bennett] because of "disagreements with []
counsel regarding the manner in which he is being represented."
(Doc. 21 at 1).   The Court scheduled a hearing November 17,
2009; however, prior to the hearing, Knight, on November 13,
2009, filed a motion requesting permission to withdraw due to a
conflict of interest. (Docs. 23, 24).   Per the motion, Knight
had "discerned that an actual conflict of interest has arisen in
the representation of the Defendant" due to the fact that
another assistant federal defender was representing a defendant
who voiced a willingness to testify against Bennett. (Doc. 23
at 1).   Accordingly, Knight immediately sought to withdraw from
Bennett's case.   His motion was granted and new counsel was
appointed for Bennett. (Docs. 23, 24).

Bennett fails to show inconsistent interests and does not
demonstrate that there ever existed a circumstance where Knight
was forced to choose between helping Bennett or another client.
Quince v. Crosby, 360 F.3d at 1264 ("An 'actual conflict' of
interest occurs when a lawyer has 'inconsistent interests.'").
Furthermore, Bennett presents no evidence that he was adversely
affected by Knight's representation.   He presents no defense
strategy that could have or should have been used in his case,

as he admitted guilt upon arrest.[11]   Thus, his claim regarding

Knight's conflict of interest must fail.

The Court further finds absolutely no merit in Bennett's

claim that he was unaware that by entering a guilty plea, he

_____

[11]     Bennett also argues that Knight rendered ineffective
assistance because he failed to file a motion to suppress "a
phone call that was used to increase Bennett's sentence."   (Doc.
78 at 3).   The phone call at issue was made *after* Bennett was
read his Miranda rights, was handcuffed, and placed in the
patrol car on August 10, 2009.   (Doc. 70 at 4).   The police car
was equipped with video and audio equipment, which recorded the
phone call placed to his mother.   (Doc. 30 at 1; Doc. 70 at 4).
During the phone call, Bennett instructed his mother to remove
"that stuff" from on top of the refrigerator and flush it down
the toilet.   (Doc. 70 at 4).

    Binding precedent is clear that:

    [t]o obtain relief where an ineffective assistance
    claim is based on trial counsel's failure to file a
    timely motion to suppress, a petitioner must prove (1)
    that counsel's representation fell below an objective
    standard of reasonableness, (2) that the Fourth
    Amendment claim is meritorious, and (3) that there is
    a reasonable probability that the verdict would have
    been different absent the excludable evidence.

Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006);
see also Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S. Ct.
2574, 91 L. Ed. 2d 305 (1986) ("Where defense counsel's failure
to litigate a Fourth Amendment claim competently is the
principal allegation of ineffectiveness, the defendant must also
prove that his Fourth Amendment claim is meritorious . . . .").
The second element is dispositive here.   The Court finds that §
2255 relief is unwarranted on this claim because there was no
underlying constitutional violation with respect to Bennett's
phone call and statements made, such that any suppression motion
would have failed, because Bennett was in custody for purposes
of Miranda because there had been a formal arrest.   United
States v. Lopez-Garcia, 565 F.3d 1306 (11th Cir. 2009).   Thus,
Bennett' claim predicated on Knight's failure to seek
suppression of the phone call must fail.

waived many of his appeal rights.  (Doc. 68 at 5).  Bennett was

notified on numerous occasions that  entering a plea agreement

limited his right to appeal.   On page nine of Bennett's signed

plea agreement, in bold print and capital letters, it states

"LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE."  (Doc. 19-1 at 9.)

The plea agreement details:

> The defendant acknowledges that he is aware that 18
> U.S.C.  § 3742 affords a defendant the right to appeal
> the sentence imposed. In exchange for the
> recommendations made by the United States in this Plea
> Agreement, the defendant knowingly and voluntarily
> waives the right to appeal any sentence  imposed in
> this case.  "Any sentence imposed" includes any
> proceeding relating to the modification or revocation
> of the supervised release term.
>
> With the limited exceptions noted below, the defendant
> also waives his right to challenge any sentence so
> imposed, or the manner in which it was determined, in
> any collateral attack, including but not limited to, a
> motion brought under 28 U.S.C. § 2255.
>
> The defendant reserves the right to contest in an
> appeal or post-conviction proceeding any of the
> following:
>
> > a. Any punishment imposed in excess of the
> > statutory maximum;
> >
> > b. Any punishment constituting an upward
> > departure from the guideline range; or
> >
> > c. A claim of ineffective assistance of counsel.
>
> In addition, the defendant reserves the right to
> petition the court for resentencing pursuant to 18
> U.S.C.  § 3582 in the event of a future retroactive
> amendment to the Sentencing Guidelines which would
> affect the defendant's sentence.

(Doc. 19-1 at 9-10, ¶¶ 17-20).   Furthermore, at the plea colloquy, Bennett acknowledged that he understood he was waiving his right to appeal the sentence imposed.   Specifically, the following exchange took place at the guilty plea hearing:

> THE COURT: You also have the right to waive your right to appeal, and I see by your plea agreements that you are waiving your right to appeal any sentence imposed with the following exceptions: And that would be any punishment in excess of the statutory maximum, any punishment constituting an upward departure of the guideline range, and any claim of ineffective assistance of counsel.
>
> Do you understand that, Mr. Bennett?
>
> DEFENDANT: Yes, sir.

(Doc. 61 at 17-18).   As noted *supra*, "[t]here is a strong presumption that the statements made during the [plea] colloquy are true." Medlock, 12 F.3d at 187.   "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."   United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

Based on the record before the Court, the undersigned finds that Bennett entered into the plea agreement, which included the sentence appeal waiver, that he acknowledged his understanding of the waiver, and that he acted knowingly and voluntarily in entering said agreement.   Based on the express terms of the sentence appeal waiver contained in Bennett's plea agreement, the Court finds that he had full knowledge that entering into

the plea agreement waived and/or limited his appeal rights. Accordingly, this claim must fail.

### 3. Claim Three:  Ineffective Assistance of Counsel at Sentencing.

Bennett's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 includes a claim for ineffective assistance of counsel at sentencing based on Mr. Brutkiewicz's alleged failure to investigate or prepare for the sentencing hearing.  (Doc. 68 at 7).  Specifically, Bennett claims counsel failed in his role as an advocate because he did not provide a "full and effective defense," because counsel did not procure a § 5K1.1 deal with the government as agreed, did not argue relevant conduct at the sentencing hearing, and did not file a motion to suppress evidence.[12]  (Doc. 78 at 4).

---

[12]   As discussed, *supra* at note 11, Bennett cannot establish a claim for ineffective assistance of counsel(with respect to his statements during his phone call to his mother).  The evidence at issue was given by Bennett following his arrest and <u>Miranda</u> warning.  Therefore, any motion to suppress filed by Brutkiewicz would not have been meritorious; thus Bennett's ineffective assistance claim, predicated on Brutkiewicz's failure to file a suppression motion, must fail.  <u>Kimmelman</u>, 477 U.S. at 375 ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious . . . . ").

Furthermore, Bennett's claim of ineffective assistance of counsel based on Brutkiewicz's failure to secure a § 5K1.1 deal must fail as such a request for sentence variance is at the complete discretion of the government.  <u>See</u> 18 U.S.C.S. App'x § 5K1.1 And, as previously discussed, the government was clear in

As discussed previously, under Strickland, in order to establish a claim for ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation "fell below an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

The record shows that the Court appointed Mr. Brutkiewicz as counsel for Bennett on November 13, 2009, subsequent to Bennett's entering a plea of guilty. (Doc. 23). In attempt to prepare for Bennett's sentencing hearing, Brutkiewicz actively sought discovery information regarding Bennett's case; specifically, he was persistent in obtaining the debriefing statement from the government in order to prepare for Bennett's sentencing,[13] he visited Bennett four or five times in Perry County, and corresponded with him numerous times by mail. (Doc. 61-1 at 4). In the course of representing Bennett, Brutkiewicz

---

its position as to its refusal to move for a § 5K1.1 sentencing departure; the government stating that, "in one breath [Bennett] says that he's tried to cooperate, and in the other breath he was calling people to destroy evidence for him to avoid getting caught with substantial, more substantial quantities of drugs." (Doc. 61-1 at 14).

[13]   After repeatedly requesting the debriefing statement from the government, by letters dated February 22, 2010, and March 4, 2010, and a telephone message on April 5, 2010; Brutkiewicz filed a motion for production. (Doc. 26). Thereafter, the government produced the requested discovery documents.

filed a written objection to the PSR after the government argued that relevant conduct, including obstruction of justice and engaging in illegal activity while maintaining custody of a minor child, should be taken into account in determining the appropriate sentencing guideline range. (Docs. 30, 35). Brutkiewicz also made oral objections to the sentencing guideline range contained in the PSR. Brutkiewicz further argued at the sentencing hearing that the Court should apply less than a hundred to one crack to powder cocaine ratio[14] and objected to the obstruction of justice enhancement.[15]  (Doc. 61-1 at 5-6).

---

[14] Brutkiewicz urged the Court to adopt a one to one ratio of powder cocaine to crack cocaine that would decrease Bennett's base level offense to 26 (instead of the presentencing recommendation of 34). (Doc. 61-1 at 5-6, 10-11; Doc. 35).

[15]  Brutkiewicz objected to the obstruction of justice charge at the sentencing hearing, but his objections were overruled, evidenced by the exchange below:

> MR. BRUTKIEWICZ:  Now, I understand that they've not brought an indictment against him for obstruction of justice in whatever U.S. Code number that might be, that it is a guideline matter.  But [Bennett] asked me to make that objection, and I explained to him that that's not a new charge.  He's not facing a new charge.  It's simply a sentencing factor.  But nevertheless, I think he is correct in arguing that it's irrelevant with regard to the prosecution of the case.

> . . . .

> THE COURT:  . . . I think that [the phone call placed by Mr. Bennett to his mother] clearly fits the

With an adjusted base level of 33, Bennett faced a guideline range of 188 to 235 months imprisonment. (Doc. 70 at 16). Ultimately, the Court concluded that the minimum guideline range sentence of 188 months best accomplished the sentencing objectives under 18 U.S.C. § 3553(a). (Doc. 61-1 16). Contrary to Bennett's assertions, there is no evidence before this Court that demonstrates that Brutkiewicz' representation of Bennett fell below the <u>Strickland</u> standard of "objective reasonableness". Additionally, Bennett has failed to show prejudice. Accordingly, his third claim is likewise due to be dismissed.

**IV. CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an

---

definition of obstruction of justice under the Guidelines and find that that guideline enhancement is appropriate to the facts and circumstances of this case. So, the objection to that application is overruled.

(Doc. 61-1 at 6, 9).

applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(2006).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under §2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983), includes showing that reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

None of Bennett's claims are such as would warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether Bennett's Claims One, Two, and Three, alleging ineffective assistance of counsel at the guilty plea and sentencing stages should be resolved in a different manner or deserve to proceed further. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

## V.    CONCLUSION

For the foregoing reasons, it is recommended that Bennett's § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docs. 68, 73, 78) be denied and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Von Clay Bennett. The

undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability, and thus, any appeal would not be brought in good faith. Accordingly, he is not entitled to appeal *informa pauperis.* It is so recommended.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **7th** day of **August, 2015.**

> /s/ SONJA F. BIVINS
> **UNITED STATES MAGISTRATE JUDGE**